**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Albanese v. Batman,* **Slip Opinion No. 2016-Ohio-5814.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5814

ALBANESE, EXR., APPELLANT, *v.* BATMAN ET AL., APPELLEES.

LIPPERMAN, APPELLANT, ET AL. *v.* BATMAN ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Albanese v. Batman,* **Slip Opinion No. 2016-Ohio-5814.]**

*Dormant Mineral Act—R.C. 5301.56—Pursuant to* Corban v. Chesapeake Exploration, L.L.C., *2006 version of Dormant Mineral Act applies— Failure to comply with notice and affidavit requirements in R.C. 5301.56(E)—Mineral interests not deemed abandoned.*

(Nos. 2015-0120 and 2015-0121—Submitted January 6, 2016—Decided September 15, 2016.)

APPEALS from the Court of Appeals for Belmont County, No. 14 BE 22, 2014-Ohio-5517, and No. 14 BE 2, 2014-Ohio-5500.

_____

**KENNEDY, J.**

## I. Introduction

{¶ 1} In these discretionary appeals from the Seventh District Court of Appeals, we address two cases involving the application of the Ohio Dormant Mineral Act ("ODMA"), codified in R.C. 5301.56. Appellant Wayne Lipperman owns a parcel of real property in Belmont County, Ohio, and appellant Mark Albanese is the executor of the estate of James Albanese III, which owns a separate parcel of real property in Belmont County, Ohio. Appellees Nile and Katheryn Batman claim to hold an interest in the minerals underlying the properties owned by Lipperman and the estate of James Albanese. James Albanese, Lipperman, and the Batmans all leased their oil and gas rights in the properties at issue herein.

{¶ 2} James Albanese and Lipperman filed separate actions seeking to quiet title to their respective properties, asserting that the severed mineral interests held by the Batmans had been abandoned. They also sought to cancel any oil and gas leases executed in relation to the Batmans' interests in their properties. James Albanese died in May 2013, and Mark Albanese, as the executor of the estate, was substituted as the plaintiff in that case.

{¶ 3} Applying this court's holding in *Corban v. Chesapeake Exploration, L.L.C.,* ____ Ohio St.3d ____, 2016-Ohio-5796, ___ N.E.3d ___, we hold that the 2006 version of the ODMA applies in these cases and because neither James Albanese nor Lipperman complied with the notice and affidavit requirements in R.C. 5301.56(E), the mineral interests are preserved in favor of their holder, the Batmans.

{¶ 4} Therefore, we affirm the judgment of the court of appeals in both cases, albeit for different reasons than those expressed in the court of appeals' decisions.

## II. Facts and Procedural History

### A. *The Batmans' Mineral Interest*

{¶ 5} In 1952, Mayme Sulsberger died and left her interest in the mineral rights underlying the properties at issue in this case to her daughter, Frances Batman ("Frances"). On September 9, 1981, Frances executed an "Affidavit and Notice of Claim of Interest in Land" that referenced mineral interests that she held in properties in Belmont County, Ohio, and she recorded the affidavit in the office of the Belmont County Recorder that same month. Shortly thereafter, Frances died, and pursuant to the terms of her will, her mineral interests in the Belmont County properties passed to her son, Nile Batman.

{¶ 6} In 1989, almost eight years after her death, Frances's will was filed in both the Belmont County Probate Court and the Belmont County Recorder's Office.

### B. *Lipperman's Property*

{¶ 7} Lipperman owns 41 acres of property in Pultney Township, Belmont County, Ohio. On April 7, 2006, Lipperman leased the oil and gas rights in his property to Reserve. In January 2007, Reserve assigned the Lipperman lease to Equity. In May 2008, Equity assigned its deep-oil-and-gas rights from the lease to PC Exploration, Inc., n.k.a. Phillips Exploration, Inc.

{¶ 8} In November 2008, the Batmans leased their oil and gas rights in Lipperman's property to Reserve. In January 2009, Reserve assigned the deep-oil-and-gas rights from that lease to PC Exploration.

### C. *The Albanese Property*

{¶ 9} The Albanese estate owns 104 acres of property in Smith Township, Belmont County, Ohio. In 2011, James Albanese leased oil and gas rights underlying his property to Hess Ohio Developments, L.L.C.

{¶ 10} In October 2008, the Batmans leased their oil and gas rights from their mineral interests that underlie the Albanese property to Mason Dixon Energy, Inc. Mason Dixon Energy subsequently assigned its rights under the Batman lease to Hess Ohio Developments.

### D. Litigation

{¶ 11} On January 20, 2012, James Albanese filed a quiet-title action against the Batmans, Mason Dixon Energy, and Hess Ohio Developments. On February 15, 2012, Lipperman filed a quiet-title action against the Batmans, Reserve, Equity, PC Exploration, and XTO Energy, Inc. (a parent company of Phillips Exploration). Lipperman and James Albanese sought to have the mineral interests underlying their properties that were held by the Batmans deemed abandoned and sought the cancellation of oil and gas leases (or assignment of those leases) entered into by the Batmans with the energy companies.

{¶ 12} Hess Ohio Developments filed a motion for summary judgment in the Albanese case, and Reserve and Equity filed a motion for summary judgment in the Lipperman case. Holding that the 20-year look-back period under the 1989 ODMA is a rolling period,[1] the trial court held that the 1981 filing of Frances's affidavit and the 1989 filing of Frances's will in Ohio both qualified as saving events under the 1989 ODMA, thereby preserving the Batmans' mineral interest, as well as the leases (and assignment of leases) made therefrom, in both cases.

---

[1] In *Albanese v. Batman*, the court of appeals described "rolling" versus "fixed" with regard to the look-back period in the 1989 version of the ODMA as follows:

> There are two views about the look-back period in the 1989 version of the [ODMA]. One view is that it is a rolling period. In generic terms, if the look-back period is rolling and there is a 20 year period where there is no savings event then the mineral interest is abandoned. The other view is that the look-back period is fixed. If it is fixed then the look-back period is twenty years preceding the enactment of the statute plus the three year grace period. Under Ohio's statute this would mean from March 22, 1969 (twenty years prior to the date of enactment) to March 22, 1992 (the end of the three year grace period).

2014-Ohio-5517, ¶ 23.

Therefore, the trial court granted summary judgment in favor of the energy companies in both cases.

{¶ 13} Mark Albanese, as executor, and Lipperman appealed from their respective cases. In each appeal, the court of appeals held that the trial court erred in holding that the 20-year look-back period is a rolling period. Instead, the court of appeals held that the 20-year look-back period under the 1989 ODMA is a fixed period from March 22, 1969, through March 22, 1989 (20 years before the effective date of the 1989 ODMA through the effective date of the 1989 ODMA), that is extended to March 22, 1992, by the statute's three-year grace period. In each case, the court of appeals held that the 1981 filing of Frances Batman's affidavit was a saving event under the 1989 ODMA that operated to preserve the severed mineral rights in Frances, and subsequently the Batmans, because it occurred within the 20 years prior to March 22, 1989. Consequently, neither opinion considered whether the filing of Frances's will was a saving event under the 1989 ODMA.

{¶ 14} Mark Albanese and Lipperman appealed to this court; Mark Albanese's case was assigned case No. 2015-0120, and Lipperman's case was assigned case No. 2015-0121. Each argued in his first proposition of law that the look-back period of the 1989 ODMA was a rolling period and in his second proposition of law that the recording of an out-of-state will is not a saving event. Lipperman argued in a third proposition of law that XTO Energy and Phillips Exploration have no standing to appear in case No. 2015-0121.

{¶ 15} We accepted both cases but held proposition of law No. 1 in each case for our decision in case No. 2014-0803, *Walker v. Shondrick-Nau*. 143 Ohio St.3d 1403, 2015-Ohio-2747, 34 N.E.3d 131.

### III. Analysis
### *A. The 2006 Version of the ODMA Applies*

**{¶ 16}** Because James Albanese and Lipperman filed their complaints after June 30, 2006, our holding in *Corban v. Chesapeake Exploration, L.L.C.,* ____ Ohio St.3d ____, 2016-Ohio-5796, __ N.E.3d __, is dispositive of both appeals and renders moot the issues raised in proposition of law Nos. 1 and 2.

**{¶ 17}** Both James Albanese's and Lipperman's complaints were predicated upon the 1989 ODMA, and in resolving the matters, both the trial court and the court of appeals applied the 1989 ODMA. In *Corban*, however, this court was presented with the following state-law question certified by a federal court: "Does the 2006 version or the 1989 version of the ODMA apply to claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the surface land holder prior to the 2006 amendments as a result of abandonment?" *Id.* at ¶ 1. We answered that the 2006 version of the ODMA applies to claims asserted after June 30, 2006, because the 1989 version of the ODMA was not self-executing.

**{¶ 18}** Under the 1989 version of the ODMA, a severed mineral interest was "deemed abandoned and vested in the owner of the surface" if none of the following applied: (1) the mineral interest was in coal or was coal-related, (2) the mineral interest was held by the United States, the state, or any other political body described in the statute, or (3) a saving event occurred within the statutorily provided 20-year period. Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981, 985-988 ("S.B. 223"). Because "deemed" means only that the mineral interest is presumed abandoned, judicial action, typically by way of a quiet-title action, was required by the surface owner for a conclusive determination that the mineral interest was abandoned and vested in the surface owner. *Corban* at ¶ 25.

{¶ 19} The 2006 version of the ODMA[2] adds additional requirements.  It provides, in R.C. 5301.56(E):

> *Before a mineral interest becomes vested under division (B)* of this section in the owner of the surface of the lands subject to the interest, *the owner of the surface* of the lands subject to the interest *shall do both of the following*:
>
> (1) *Serve notice* by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, *of the owner's intent to declare the mineral interest abandoned.*  If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located.  The notice shall contain all of the information specified in division (F) of this section.
>
> (2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, *file* in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located *an affidavit of abandonment* that contains all of the information specified in division (G) of this section.

(Emphasis added.)

---

[2] The ODMA was amended again in 2014, 2013 Sub.H.B. No. 72, but the relevant language remains the same.

**{¶ 20}** Therefore, under the 2006 ODMA, in order for a severed mineral interest to be deemed abandoned and vested in the surface owner (1) the mineral interest cannot be in coal, (2) the mineral interest cannot be held by certain entities, (3) no saving event can have occurred during the relevant period, *and* (4) the surface owner "shall" have served notice and filed the required affidavit. Use of the word "shall" means that the notice and affidavit obligations are mandatory, so a surface owner's failure to provide notice to the mineral-rights holder would render further analysis under the ODMA unnecessary. The mineral rights cannot be deemed abandoned if the mineral-rights holder has not been provided notice.

**{¶ 21}** This result is confirmed by looking at other parts of the ODMA. For example, the statutorily provided 20-year period looks back 20 years from the date of the service of notice required by R.C. 5301.56(E) to determine whether a saving event occurred that would preclude abandonment of the severed mineral interest. R.C. 5301.56(B)(3). Absent service of the notice, there is no date from which the look back can occur. Also, the 2006 ODMA specifically provides that notice and an affidavit are required before the mineral interest becomes "vested" in the surface owner. R.C. 5301.56(E). Accordingly, the surface owner's service of the notice and filing of the affidavit are required under the 2006 ODMA, and if those requirements are not met, the severed mineral interest cannot be deemed abandoned and instead remains with the mineral-interest holder.

**{¶ 22}** Therefore, because neither Lipperman nor James Albanese complied with the statutory notice and affidavit provisions found in R.C. 5301.56(E), the severed mineral rights never vested in them, but remain with the Batmans. Because the 2006 version of the ODMA applies in these cases and Lipperman and James Albanese failed to comply with R.C. 5301.56(B) and (E), the first and second propositions of law are moot.

*B. Standing*

{¶ 23} Lipperman's third proposition of law asserts that "XTO Energy, Inc. and Phillips Exploration, Inc., have no standing to appear in this case." Not only does that proposition of law misconstrue the doctrine of standing by attempting to apply it to a defendant's participation in an action, but the argument Lipperman makes under that proposition of law in his merit brief is not properly before the court, because he did not raise it in his memorandum in support of jurisdiction.

{¶ 24} Standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, citing *Black's Law Dictionary* 1442 (8th Ed.2004). Standing to sue is necessary for invoking the jurisdiction of the common pleas court. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 24. To have standing, the party *bringing the action* must assert a personal stake in the outcome of the action. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 23. A plaintiff establishes standing by showing that she suffered an injury that is fairly traceable to the defendant's conduct and that is likely to be redressed by the requested relief. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22.

{¶ 25} Lipperman—the plaintiff in one of the quiet-title actions here—contends that certain named defendants lack "standing to appear in this case." Reserve Energy Exploration Company, Equity Oil & Gas Funds, XTO Energy, Inc., and Phillips Exploration, Inc., are parties to this action because Lipperman named them as defendants in his quiet-title complaint; they have not asserted a claim for affirmative relief. Accordingly, the doctrine of standing does not apply to Reserve, Equity, XTO, and Phillips. And when Lipperman appealed the trial court's entry of summary judgment, XTO and Phillips became appellees—and

were entitled to participate in the appellate process—because they were parties in the trial court and because they were among the defendants in whose favor the trial court granted summary judgment. *See In re Vacation of Twp. Rd. 114, Hancock Cty.*, 6 Ohio App.2d 73, 77, 216 N.E.2d 768 (3d Dist.1966) ("in every appeal, unless otherwise prescribed, the adversary parties in the original proceedings who are not parties appellant automatically become parties appellee").

{¶ 26} Furthermore, Lipperman's third proposition of law fails for another reason. In his merit brief, Lipperman's argument under his third proposition of law differs substantially from the argument he raised in his memorandum in support of jurisdiction. In his memorandum in support of jurisdiction, he simply stated that XTO and Phillips lack standing because prior to oral argument in the court of appeals, they filed a release of any interest in the lease entered into by appellees Nile and Katheryn Batman. Now Lipperman focuses on Reserve and Equity, not on XTO and Phillips. And instead of relying on the purported release, Lipperman now primarily argues that pursuant to Civ.R. 56(B), Reserve and Equity were not entitled either to move for summary judgment or to oppose Lipperman's motion for summary judgment in the trial court because "[n]o claim was asserted against Reserve Energy or Equity Oil and Gas with regard to the ownership of the oil and gas underlying the property."[3] Because Lipperman did not raise that argument in his memorandum in support of jurisdiction, it is not properly before this court. *See In re Timken Mercy Med. Ctr.*, 61 Ohio St.3d 81, 87, 572 N.E.2d 673 (1991). Therefore, we reject Lipperman's third proposition of law.

---

[3] The final sentence of Lipperman's argument under his third proposition of law in his merit brief does state, "In addition, since the initiation of this litigation, both Reserve Energy and XTO released their leasehold interests in the subject real estate before the hearing before the Court of Appeals, and failed to disclose that fact to the Court or opposing counsel."

IV. Conclusion

{¶ 27} This court's decision in *Corban,* __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, is controlling in these cases. James Albanese and Lipperman filed their complaints after June 30, 2006, so pursuant to *Corban,* the 2006 version of the ODMA applied to their cases. In order for a severed mineral interest to be deemed abandoned and vested in the surface owner under the 2006 version of the ODMA, the owner of the surface rights must comply with R.C. 5301.56(E), which requires the surface owner to serve the mineral-interest holder with notice of the owner's intent to declare the mineral interest abandoned and to file an affidavit of abandonment in the county recorder's office in the county in which the property is located. Because neither Lipperman nor James Albanese complied with these requirements, the severed interests in the oil and gas that underlie their properties held by the Batmans are preserved.

{¶ 28} Therefore, we affirm the judgments of the court of appeals, albeit for different reasons than those stated in the court of appeals' opinions.

Judgments affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

PFEIFER, J., concurs in judgment only, with an opinion joined by O'NEILL, J.

_____

**PFEIFER, J., concurring in judgment only.**

{¶ 29} I concur in the judgment of the majority but disagree with how it got there. The majority opinion is based upon this court's decision in *Corban v. Chesapeake Exploration, L.L.C.*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __. I dissented from the portion of the judgment in *Corban* that the majority relies on in this case. In *Corban*, I would have held that former R.C. 5301.56, the 1989 version of the Ohio Dormant Mineral Act, Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981 ("1989 ODMA"), automatically reunited mineral rights and

surface rights in the owner of the surface property in the absence of any saving event in any 20-year period within the 1989 ODMA's purview. The lead opinion in *Corban* states that the ODMA is not self-executing, that instead, "the surface holder was required to bring a quiet title action seeking a decree that the mineral rights had been abandoned in order to merge those rights into the surface estate." Lead opinion at ¶ 40. Regardless, even under my interpretation of the 1989 ODMA, the interests of appellees Nile and Katheryn Batman were preserved by two saving events: the 1981 recording of Frances Batman's "Affidavit and Notice of Claim of Interest in Land" and the 1989 filing of Frances Batman's will in the Belmont County Probate Court and the Belmont County Recorder's Office. Thus, there was no 20-year period during the purview of the 1989 ODMA without some preservation of the Batman interest, and therefore, there was no reunification of the mineral rights with the surface rights.

{¶ 30} We learned in oral argument that the root of the Batman interest came from bartering undertaken by Nile Batman's great-great-grandfather, a dentist who traded dental care for interests in his patients' mineral rights; he put them in dentures and they gave him indentures. Hopefully, there were no hard fillings. Now his patience with those mineral rights has paid off for his progeny, a crowning achievement, even if the prices for the commodities involved have receded somewhat from their crest. Somewhere, the good doctor is smiling, knowing that ancient fees owed for drilling and extractions have been paid many times over by fees paid for drilling and extraction. He wouldn't care that the 1989 ODMA has been rendered toothless.

O'NEILL, J., concurs in the foregoing opinion.

_____

Lancione, Lloyd & Hoffman Law Offices Co., L.P.A., Richard L. Lancione, and Tracey Lancione Lloyd, for appellants in both cases.

Geiger, Teeple, Robinson & McElwee, P.L.L.C., and Bruce E. Smith, for appellees Nile E. and Katheryn Batman in both cases.

Kincaid, Taylor & Geyer, Scott D. Eickelberger, William J. Taylor, David J. Tarbert, and Ryan H. Linn, for appellee Hess Ohio Developments, L.L.C., in case No. 2015-0120.

Steptoe & Johnson, P.L.L.C., Lyle B. Brown, and J. Kevin West, for appellees Equity Oil & Gas Funds, Inc., and Reserve Energy Exploration Company, in case No. 2015-0121.

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Christopher J. Hogan, for appellees XTO Energy, Inc., and Phillips Exploration, Inc., in case No. 2015-0121.

_____